These cases are here on appeals from final decrees dismissing ten bills in equity alleging misuse of respondents' corporate funds. All cases raise the same legal questions;
Complainants in their bills asserted that they were members in good standing and communicants, pew holders or contributors of the several churches.
The respondents in each case were the Bishop and Vicar General of the Diocese of Providence together with the pastor and two lay members of the local church, "in their capacity as members of the Board of Trustees of respondent church, a church corporation, incorporated under the laws of the State of Rhode Island."
Each corporation was created pursuant to Rhode Island Acts and Resolves, 1869, p. 221: "An Act to incorporate the Bishop and Vicar General of the Diocese of Hartford, together with the Pastor and two Laymen of any Roman Catholic Church or Congregation in Rhode Island." The Act was amended in 1872 to apply to the Diocese of Providence. It was a part of the bills by reference.
The bills were demurred to on ten grounds, seven of which were overruled. Of these seven, one was because the matters set forth in the bills were asserted to be ecclesiastical not civil questions and therefore were claimed to be outside the jurisdiction of the court. *Page 272 
The Superior Court sustained the demurrers to the bills of complaint on three grounds. Of these, two, to wit, insufficient allegation of noncompliance with the by-laws before making the expenditures and failure to show the nature of respondent Bishop Hickey's interest in the Providence Visitor, were not argued though referred to in complainants' brief. In open court complainants' counsel stated that his grounds of appeal based thereon were not pressed and neither complainants nor respondents discussed them. The question argued concerned the legal construction of the Act, supra.
Of the court's jurisdiction to interpret the meaning of an Act of the legislature there can be no doubt whatever. No corporation whether ecclesiastical or otherwise may arbitrarily, and without liability to question, exercise powers outside the scope of the authority granted to it by the State. No corporation when called into a civil court by proper process may prevent the exercise of the court's authority to construe the meaning of the charter granted by the State and by virtue of which corporate action is carried on. In construing the meaning of an Act of the legislature the court is not interfering in the least with the internal management of its creature corporation. Our reason for declining, on the record presented, to consider whether matters alleged in the bills furnish grounds for exercise of jurisdiction is hereafter more fully treated.
Each bill alleged that a portion of respondents' general funds was diverted contrary to its charter, and paid over directly or for the support of undertakings outside the defined geographical limits of respondent corporation's parish. The objects aided were Roman Catholic Diocesan high schools, the National Catholic Welfare Conference and the Providence Visitor, a newspaper published in the general interests of the Roman Catholic church. It was conceded that these donees were educational or charitable institutions of the Roman Catholic church in general. The bill charged that funds for the purposes above specified were improperly *Page 273 
contributed thereto because said purposes did not concern the immediate interests of the local parish corporation but were for the advancement of the interests of the Roman Catholic church in general. For the latter purpose complainants claimed that under their charters the respondents' general funds could not be used.
At the hearing respondents wished to argue upon the question of jurisdiction of a civil court to hear this case and devoted a large portion of their brief thereto. At that time we declined to depart from our established practice of hearing only questions properly presented on the record and we stated to counsel that the only questions which would be considered were rulings by which appellants were aggrieved and which were inherent in the decree of the Superior Court. Whether or not the question of jurisdiction inhered in the decree, no claim can be made that appellants were aggrieved thereby.
An appeal from a final decree in equity under our statutes (G.L. 1923, Ch. 339, Sec. 25) only may be taken by a "party aggrieved." It is not "a proceeding de novo for a retrial of the cause." It is "a proceeding for the purpose of reviewing the errors stated in the appellants' reasons of appeal." Vaill v.McPhail, 34 R.I. 361; Shepard v. Springfield etc. Ins. Co.,42 R.I. 174, at 186; Binney v. R.I. Hos. Trs. Co.,43 R.I. 222. Appellants' reasons of appeal incorrectly state that the Superior Court sustained all ten of respondents' grounds of demurrer. In fact it sustained but three and the jurisdictional ground was with others expressly overruled. Jurisdiction over the cases for the purposes of these bills definitely then was settled. Whether the ruling was correct or incorrect it became the controlling law of these cases unless reversed on appeal presented by persons aggrieved and entitled to take an appeal. An erroneous statement of the lower court's action in appellants' reasons of appeal could not enlarge the scope of their grievance and the questions to be reviewed by this court. *Page 274 
Apparently realizing that complainants' appeals might not bring here for review the question of jurisdiction, the respondents sought to raise the question again by motions after the appeals were filed in this court to "dismiss the appeal" for lack of jurisdiction. While we have said that a question of jurisdiction ought to be raised as soon as possible and may be raised at any time, David v. David, 47 R.I. 304, the same question may not be raised and argued repeatedly. When the court's jurisdiction has been attacked in the trial court, and the court has held that it has jurisdiction, the holding stands unless reversed by some form of appellate procedure properly presenting the question to this court for review. Respondents are not and can not now be appellants in this case because the final decrees dismissing the bills were in their favor and they were not aggrieved thereby. As the cases now stand before us respondents were not aggrieved by the action of the Superior Court in dismissing the bills. In the form of a motion to dismiss the appeal, the question of jurisdiction can not be converted prematurely into an appealable question by a litigant not aggrieved by the final decree. To indirectly enlarge the operation of the statute upon appeals from final decrees in equity, as respondents seek to have us do, would introduce a new and undesirable practice. Proceedings on probate appeals furnish no basis for this innovation.
The correctness of the decree appealed from turns upon the proper construction of the act incorporating respondent corporations. That act, so far as material to the present cases, is as follows: "Sec. 3. Such body corporate shall have power to receive and hold by gift, grant or purchase, all property real or personal, that may be conveyed thereto, for the purpose of maintaining religious worship according to the doctrine, discipline and ritual of the Roman Catholic Church, and for the support of the educational or charitable institutions of thatchurch." "Sec. 4. Such body corporate shall at all times be subject to the general laws and discipline of the Roman Catholic Church, shall receive and *Page 275 
enjoy its franchises as a body politic, solely for the purposes mentioned in the third section of this act."
It is contended by complainants that the words "that church" refer to the incorporated local respondent corporation and not to the support of the educational or charitable institutions connected with the Roman Catholic church in general. They argue that the use of a small letter "c" in the word church so indicates. This contention is not sound. No grammatical reason exists which calls for a capital "c". The natural antecedent of the word that is "Roman Catholic." To construe that as referring only to the local parish corporation would be inexact. The words would be needless because the power would be inherent to so use its own funds. The words of Section 3 plainly refer to a generic type of worship and of educational and charitable institutions. It would be a forced construction to hold that the first part of the sentence was dealing with generalities in the type of worship and that the latter portions suddenly shifted to localisms in the type of charitable or educational institutions. An examination of the entire Act of 1869 indicates that it invariably referred when dealing with the specific local church corporation to "such body corporate" or "this corporation." The natural meaning of the paragraph is that the uses to which the general funds and property of the local parish corporation may be put are such as are connected with the Roman Catholic church in general. The uses of corporate funds naturally will be made largely for the maintenance and advancement of the particular corporation but a construction of the language of the Act as so confining the uses of the funds and preventing their employment in part at least if properly authorized for the advancement of the general policies of the Roman Catholic church for the carrying out of which the several respondent corporations exist is too narrow.
That respondents might use general funds of their several churches for local educational and charitable Roman *Page 276 
Catholic institutions, complainants do not question. It is not denied that the purposes for which the funds were used in the present cases were for the advancement of the interests of the Roman Catholic church in general. Without such denial, in view of our interpretation of the act of incorporation, the bill is fatally defective on demurrer, as the Superior Court correctly held. Enos v. Church of St. John the Baptist, 187 Mass. 40.
In each case the respondents' motion to dismiss the appeals is denied without prejudice to their raising the question of jurisdiction by appeal if they are aggrieved by a final decree of the Superior Court in these causes.
In each case the appeal of the complainants is dismissed, the decree appealed from is affirmed and each cause is remanded to the Superior Court for further proceedings.